IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| APPLOGIX DEVELOPMENT GROUP, INC., | * | |
| Plaintiff | * | |
| v. | * | Civil No. 3:05-CV-1105-H |
| DALLAS CENTRAL APPRAISAL DISTRICT, *et al.*, | * | |
| Defendant. | * | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants' Motion for Summary Judgment, and supporting brief and appendix, filed March 13, 2006; Plaintiff's Response, and supporting brief and appendix, filed April 17, 2006; Defendants' Reply, filed May 2, 2006; Defendants' Letter Brief, dated July 6, 2006; and Plaintiff's Letter Brief in Response, dated July 19, 2006.

For the reasons that follow, Defendants' motion for summary judgment is granted as to Plaintiff's federal claim. The motion is otherwise denied without prejudice to reasserting the arguments in state court, to which the case is remanded.

**I. Background**

This case centers around a contract dispute between Plaintiff AppLogix Development Group, Inc. ["AppLogix"] and Defendant Dallas Central Appraisal District ["DCAD"]. AppLogix is a local software development corporation. DCAD is political subdivision of the State of Texas responsible for valuing property for tax purposes in Dallas County. From 2000 to 2002, AppLogix developed

software to facilitate DCAD's appraisal function. That software was entitled "Mass Appraisal Records System," or "MARS." Both AppLogix and DCAD now claim ownership of the software. In addition, DCAD has hired two key employees away from AppLogix, in alleged violation of contractual agreements between AppLogix and DCAD, and between the employees and AppLogix. AppLogix further claims that DCAD has interfered with its MARS marketing opportunities. DCAD counterclaims that AppLogix has not fulfilled its contractual obligations to pay DCAD royalties for MARS marketing.

On May 3, 2005, Plaintiff filed suit in state district court. On May 30, 2005, the case was timely removed on the basis of federal question jurisdiction. *See* 28 U.S.C. § 1331. In the sole claim arising under federal law, Plaintiff asserts that in violation of 42 U.S.C. § 1983 ["Section 1983"] DCAD acted under color of state law to deprive AppLogix of its constitutional property rights; and that AppLogix is also entitled to attorney's fees under 42 U.S.C. § 1988 as a result. Plaintiff alleges the following causes of action arising under state law: breaches of contract; breaches of fiduciary duty (and knowing participation therein); misappropriation of trade secrets; violation of the Texas Civil Theft Liability Act; tortious interference with contracts; conversion; business disparagement; negligent misrepresentation; negligence and gross negligence; unjust enrichment and restitution; conspiracy; and an action for accounting. Defendant DCAD counterclaims under state law for breach of contract; misrepresentation; unjust enrichment and restitution; and attorney's fees. Both parties apply under the Declaratory Judgment Act for an adjudication of contract rights; and DCAD asks for a declaration that it may terminate the licensing agreement(s) that AppLogix has allegedly breached.

In the present motion under consideration, DCAD and all individual Defendants ask the

Court for summary judgment on each of Plaintiff AppLogix's claims. DCAD asks for affirmative summary judgment on its counterclaim for breach of contract, as well as for its Declaratory Judgment Act requests.

**II. Summary Judgment Standard**

The Federal Rules of Civil Procedure provide that summary judgment shall be rendered when the evidence establishes that there is "no genuine issue as to any material fact" and that the movant is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994); *Armstrong v. City of Dallas*, 829 F. Supp. 875, 876 (N.D. Tex. 1992), *aff'd,* 997 F.2d 62 (5th Cir. 1993). Under proper circumstances, awarding summary judgment is favored in the federal courts: "Summary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir. 1986) (footnote omitted).

A summary judgement movant must inform the court of its basis for the motion and identify the material specified in Rule 56(c) that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986); *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). If the movant fails to meet its initial burden, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (en banc).

If the movant carries its burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Celotex*, 477 U.S. at 324. A party opposing summary judgment must go beyond the pleadings and must set forth specific facts showing that there is a genuine issue

for trial. FED. R. CIV. P. 56(e); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A party opposing summary judgment may not rest on mere conclusory allegations or denials in the pleadings. FED. R. CIV. P. 56(e); *see also Hightower v. Texas Hosp. Ass'n.*, 65 F.3d 443, 447 (5th Cir. 1995). Furthermore, a party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. There must be "significant probative evidence" on which a jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at 249.

In determining whether a genuine issue exists for trial, the Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the nonmovant. *Eastman Kodak v. Image Technical Servs., Inc.*, 504 U.S. 451, 456-58 (1992); *Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 292 (5th Cir. 1990). If the record, taken as a whole, cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue remains for trial. *Matsushita*, 475 U.S. at 587; *see Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991).

## III. Analysis

With these summary judgement standards in mind, the Court turns first to an analysis of the claim on which its jurisdiction is premised. The elements of a Section 1983 claim are (1) a deprivation of a right secured by the Constitution or the laws of the United States, (2) caused by persons acting under color of state law. *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999).

The inquiry begins, as it must, by determining the federal right invoked. *Handley v. City of Seagoville, Tex.*, 798 F. Supp. 1267, 1271 (N.D. Tex. 1992) (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)). AppLogix asserts unspecified violations of the following federal rights in its Response and/or in its Complaint: First Amendment right to free speech; Fourth Amendment

freedom from unreasonable search and seizure; Fifth Amendment right to just compensation for taking of property; and Fourteenth Amendment right to due process. No summary judgment evidence has been produced on the First Amendment claim (the basis for which is a mystery); or on the Fourth Amendment claim, for which no law enforcement action or expectation of privacy is suggested here. *See U.S. v. Paige*, 136 F.3d 1012, 1017 (5th Cir. 1998) (noting that the Fourth Amendment grants the "right of the people to be secure in their persons, houses, papers and effects," and requires a warrant to be supported by probable cause) (citations omitted)).

The sole possible federal right arising under the factual scenario presented turns, if at all, on AppLogix's owning a property right appropriated by DCAD without just compensation or due process, under the Fifth and Fourteenth Amendments to the Unites States Constitution. Only two colorable property rights potentially supporting a Section 1983 claim are alleged: ownership of the MARS software and of AppLogix's alleged "trade secrets."[1] Compl. at 21, ¶ 13.4. The Court examines each in turn.

Both AppLogix and DCAD claim ownership of MARS. AppLogix's claim rests in part on its belief that DCAD is not authorized to own such property. Under Texas law, however, DCAD is so empowered. *See* TEX. LOCAL GOV. CODE §§ 271.002, 271.003(4) & (8), 271.005 (allowing agencies such as DCAD to contract for, purchase, and own personal property, including software, if it is necessary, useful, and appropriate to the agency's purpose); TEX. TAX. CODE § 6.01 (creating tax appraisal district as political subdivision of the state); *San Antonio Area Found. v. Lang*, 35

---

[1] Although AppLogix also refers in passing to grounding its Section 1983 claim on DCAD's alleged interference with AppLogix's rights to market MARS derivative software ("Mars/Marketing"), AppLogix cites no case in which mere interference with contract expectations rises to the level of a constitutional violation; and this Court declines to pursue that line of argument in the absence of cited authority.

S.W.3d 636, 640 (Tex. 2000) (defining "personal property" broadly to include "everything that is subject to ownership not falling under the definition of real estate"); *Dallas Cent. Appr. Dist. v. Tech Data Corp.*, 930 S.W.2d 119, 123-24 (Tex. App.--Dallas 1996, writ denied) (holding that computer software is intangible personal property); Mitchell Decl. ¶ 3 (affirming that the MARS software is necessary, useful, and appropriate to the governmental purpose of appraising property).

Moreover, on March 5, 2003, AppLogix expressly assigned to DCAD all of its interest in MARS. *See* Def. App. at 555 ["2003 Assignment Agreement"] ("AppLogix hereby assigns and transfers to DCAD all of its right, title and interest, if any, in and to all copyrights and all other intellectual property rights in MARS."). The 2003 Assignment Agreement confirms AppLogix's intent "that DCAD be the sole and exclusive original owner of all copyrights and all other intellectual property rights in MARS." *Id.* Under that contract, DCAD owns MARS and all intellectual property rights in it.

AppLogix does not present evidence of any agreement to the contrary. Instead, AppLogix argues that it was unlawfully coerced into executing the 2003 Assignment Agreement; and that it transferred its rights to MARS under duress. Specifically, AppLogix presents evidence that DCAD's Chief Appraiser Foy Mitchell, Jr., threatened that DCAD would otherwise "sue AppLogix into the ground" with the "deep pockets" of taxpayer money. Plf. App. at 150-51, 869-83, 982, 1137. The Court must take these allegations as true. *See Gremillion*, 904 F.2d at 292. Notwithstanding the inflammatory language, a threat to file a lawsuit does not rise to the level of duress required to render a contract unenforceable. *See Continental Cas. Co. v. Huizar*, 740 S.W.2d 429, 430 (Tex. 1987) ("A threat to institute a civil suit . . . does not, as a matter of law, constitute duress.").

Under Texas law, duress is a contract defense only if (1) a threat is made to do something the

threatening party has no legal right to do; and (2) some illegal exaction, or some fraud or deception occurs; and (3) restraint is imminent, such as "to destroy free agency without present means of protection." *Beijing Metals & Minerals Import/Export Corp. v. American Bus. Ctr., Inc.,* 993 F.2d 1178, 1184-85 (5th Cir. 1993). AppLogix' duress theory is defeated not only by the lawful nature of the threat, but also by the requirement that harm be imminent. It is undisputed that the 2003 Assignment Agreement was executed approximately nine months after DCAD's comments, during which time AppLogix availed itself of legal advice; and that, acting at least in part on that advice, AppLogix decided to negotiate. Def. App. at 183, 186, 200, 205-206, 211-12, 220, 223-24, 402-03, 415. That negotiation was informed by prior consulting contracts between AppLogix and DCAD. Although both parties cite ambiguities in the prior contracts, MARS is described therein as a "work for hire," strongly implying DCAD ownership of MARS and its developmental materials. Moreover, the post-threat negotiations culminated not only in the 2003 Assignment Agreement, but also in a concurrent Licensing Agreement, in which AppLogix obtained a license to market MARS "derivative works" in exchange for a royalty. Def. App. at 418. Under these undisputed circumstances, no reasonable juror could find unlawful coercion. *See Texas Commerce Bank N.A. v. United Savings Ass'n of Tex.*, 789 F. Supp. 848, 854 (S.D. Tex. 1992) ("When circumstances present a person with a series of alternatives, all of which are bad, the choice of the least bad is not duress."). The 2003 Assignment Agreement stands; and DCAD owns MARS.

The second property right on which AppLogix bases its Section 1983 claim involves "trade secrets," which DCAD allegedly misappropriated. Assuming without deciding that misappropriation of trade secrets can support a civil rights claim, the Court is given no evidence of any sufficiently specified secret to protect.

AppLogix asserts three general categories of information that it accuses DCAD of wrongfully obtaining: "source code"; computer data files; and the collective knowledge and experience of two former AppLogix employees now employed by DCAD. With regard to the first category, DCAD argues correctly that AppLogix cannot claim a trade secret in MARS source code, because all rights to MARS are owned by DCAD.[2] *See Complete Pharmacy Resources, Ltd. v. Feltman*, 2005 WL 1949540, *6 (S.D. Tex. 2005) ("Of the cases cited by [plaintiff] to show that 'computer software or programs are subject to trade secret protection and misappropriation of trade secret claims,' not one indicates that a plaintiff could claim a proprietary secrecy in another party's intellectual property."). AppLogix fails to come forward with summary judgment evidence that the source code at issue is for a different and distinguishable project.

With regard to the third category of AppLogix's alleged trade secrets, it is well established that the general skills, knowledge and experience an employee acquires as part of his job are not trade secrets. *See, e.g.*, *American Derringer Corp. v. Bond*, 924 S.W.2d 773, 777-78 (Tex. App.--Waco 1996, no writ); *M.N. Dannenbaum v. Brummerhop*, 840 S.W.2d 624, 631-32 (Tex. App.--Houston [14th Dist.] 1992, writ denied). Only the second "trade secret" category -- computer data and email files -- requires further analysis.

To state a claim for trade secret misappropriation under Texas law, a plaintiff must (1) establish that a trade secret existed; (2) demonstrate that the trade secret was acquired by the defendant through a breach of a confidential relationship, or by improper means; and (3) show that

---

[2] AppLogix maintains that DCAD's ownership of "a copy" of MARS does not give DCAD the rights to developmental or "source" code. However, DCAD does not own a mere "copy" of MARS; it owns all rights to MARS. Restricting "all rights" to mean only the bare machine code does not comport with the intent manifested by the parties in the 2003 Assignment Agreement.

the defendant used the trade secret without authorization from the plaintiff. *General Universal Sys., Inc. v. Lee*, 379 F.3d 131, 149 -150 (5th Cir. 2004). For purposes of a Section 1983 analysis, the first prong is key; and Plaintiff fails to meet it.

Under Texas law, a trade secret is defined as any formula, pattern, device, or compilation of information used in a business, that gives the owner an opportunity to obtain an advantage over competitors who do not know or use it. *Phillips v. Frey*, 20 F.3d 623, 628 (5th Cir. 1994). To establish the existence of a trade secret for the first prong of the misappropriation test, certain criteria must be considered: the extent to which the information is known outside of the employer's business; the extent to which it was known by employees and others involved in the business; the extent of the measures taken by the company to guard the information's secrecy; the value of the information to the company and its competitors; the amount of effort or money expended by the company in developing the information; and the ease or difficulty with which the information could be properly acquired or duplicated by others. *Sands v. Estate of Buys*, 160 S.W.3d 684, 687-88 (Tex. App.--Ft. Worth 2005, no writ) (citing *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2005)). On none of these points has AppLogix submitted evidence, discussion, or legal analysis in the trade secret context.

Instead, AppLogix skips to the second element of the misappropriation test – the method by which information is obtained – and argues that AppLogix is entitled to a presumption that information is a trade secret if the means used to obtain it is surreptitious enough. No case cited by AppLogix supports this proposition, which would effectively nullify the first element of the test; and the Court rejects the underlying logic as flawed. A former employee's accessing an email directory may, depending on the circumstances, be in violation of the law, but it does not in and of itself make

the emails' contents a trade secret. Similarly, retention of a CD containing "code" does not automatically invest the code with protected status. That a former employee copies his personal hard drive before he departs does not transform those files into valuable, proprietary data guarded to the requisite degree to meet the trade secret test. A showing must still be made that a specified trade secret exists. The conclusory list of information categories in AppLogix's Response, supported by no citation to admissible evidence, is insufficient to raise a genuine issue of material fact on this issue. *See FMC Int'l A.G. v. ABB Lummus Global, Inc.*, 2005 WL 1745465, *3 (S.D. Tex. 2005); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) ("[The plaintiff's] burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.") (quotations and citations omitted)).

AppLogix has failed to establish either ownership of MARS or of a specified trade secret. Because no property right exists for which deprivation would be a violation of the Constitution or other federal law, AppLogix's Section 1983 claim must fail. *See Handley,* 798 F. Supp. at 1271 (refusing to infer a constitutional issue from a simple breach of contract). DCAD's motion for summary judgment is granted for that claim.

Having dismissed the federal cause of action that was the sole substantive basis for removal of the case from state court, the Court questions its jurisdiction to hear the remaining matters. *See Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 586-87 (5th Cir. 1992) (reversing judgment entered after a jury trial where the district court exercised supplemental jurisdiction following pre-trial dismissal of the sole federal claim). All of the parties' non-declaratory causes of action arise, if at all, under state law. *See Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir. 1997) (holding that the Declaratory Judgment Act "does not confer subject matter jurisdiction on a federal

court where none otherwise exists"). The viability of Plaintiff's tort claims involves application of Texas's newly modified limited waiver of governmental immunity, best decided in the jurisdiction most concerned. *E.g.*, *Reata Constr. Corp. v. City of Dallas*, --- S.W.3d ----, 2006 WL 1792219 (Tex. 2006). Nothing sets the case apart from the Fifth Circuit's general rule: "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction." *Parker & Parsley Petroleum Co.*, 972 F.2d at 586 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

In short, this local commercial dispute has no business in federal court. Because the lawsuit is here on removal, remand rather than dismissal is warranted. *See, e.g., Whiting v. University of So. Miss.*, 451 F.3d 339, 352 (5th Cir. 2006).

## IV. Conclusion

For the reasons set out above, Defendants' motion for summary judgment is **GRANTED** with regard to Plaintiff's Section 1983 claim and the grounds therefor; and, along with Defendants' motion to dismiss, it is in all else **DENIED WITHOUT PREJUDICE**. Plaintiff's Section 1983 claim is **DISMISSED WITH PREJUDICE**.

Finding no subject matter jurisdiction, the Court is of the view that this case should be, and it is hereby, **REMANDED** to the 44th Judicial District of Dallas County, Texas.

SO ORDERED.

DATED: August 29, 2006

Barefoot Sanders

BAREFOOT SANDERS, SENIOR JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS